**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **BRANCH BANKING AND TRUST COMPANY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DRUG TRANSPORT, INC., DB&D INVESTMENTS, LLC, DTI LOGISTICS, INC., and RSL LEASING, LLC,**<br><br>**Defendants.** | ) | **CIVIL ACTION FILE**<br><br>**NO. 1:16-cv-03783-AT** |

**EMERGENCY MOTION FOR APPOINTMENT OF A RECEIVER AND FOR INJUNCTIVE RELIEF AND MEMORANDUM OF LAW IN SUPPORT**

## I. INTRODUCTION

Plaintiff Branch Banking and Trust Company ("BB&T") files this emergency motion for the appointment of a receiver and the issuance of related injunctive relief as described in BB&T's Verified Complaint for Damages, Appointment of a Receiver and Injunctive Relief (the "Complaint"). BB&T is owed more than $4.2 million, jointly and severally, by Defendants Drug Transport,

Inc. ("Drug Transport"), DB&D Investments, LLC ("DB&D"), DTI Logistics, LLC ("Logistics") and RSL Leasing, LLC ("RSL"). BB&T's claims are liquidated and undisputed and arise out of commercial loans made pursuant to written loan documents, including, without limitation, loan agreements, promissory notes, deeds to secure debt, security agreements, UCC-1 financing statements and corporate guaranties. BB&T has properly perfected liens upon and security interests in all or substantially all of Defendants' assets to secure the obligations owed to it.

Unfortunately, on at least two separate occasions, BB&T has been severely damaged by decisions and actions of the management of Defendants. First, in 2014, BB&T learned that Drug Transport had been intentionally overstating the quantity and quality of its accounts receivable in order to borrow more than Drug Transport was entitled to borrow, and that Drug Transport also had been overstating its profitability for multiple calendar quarters in its financial reporting to BB&T. These facts – that intentional misrepresentations were made to BB&T and caused damage to BB&T – were conceded and were not disputed in the chapter 11 bankruptcy cases of Defendants.

Second, after more than one year in chapter 11 bankruptcy cases, Defendants obtained confirmation of a chapter 11 plan that gave them the opportunity to repay their debts over time. This chapter 11 plan was based upon projections provided

by management of Defendants as to their ability to grow their business, cut costs, increase revenue, and become cash flow positive. The bankruptcy cases were closed in or about October of 2015. Within a few months, it became apparent that Defendants were not going to achieve their optimistic projections of revenue and profitability, and Defendants began to default in making required monthly payments to BB&T and other creditors. As a result, hundreds of thousands of dollars spent in Bankruptcy Court has been wasted, and the value of BB&T's collateral has further declined.

In September 2016, Defendants (acting through their President and sole Director under the chapter 11 plan, Richard S. Lockwood, Jr. ("Junior Lockwood")) decided that their financial distress was too severe to be remedied, that they would not be able to perform under the chapter 11 plan of reorganization, and that the best course of action was to commence an orderly wind down and liquidation of their assets. That process has started, and upon information and belief, Defendants are no longer operating as a going concern. These circumstances leave BB&T's collateral (which includes, without limitation, cash proceeds of receivables and portable equipment) at risk of loss, destruction, diversion, theft, and mismanagement. This Court should not leave current management in control and should instead appoint a receiver to take over the wind down and liquidation of the assets and business of Defendants. BB&T also

respectfully requests that the Court grant injunctive relief in aid of the receivership and enter a proposed order substantially in the form attached hereto as Exhibit A (the "Proposed Order").

## II. FACTUAL BACKGROUND[1]

Defendants were engaged in transportation and trucking-related businesses. Pursuant to a series of promissory notes, loan agreements, deeds to secure debt, security agreements, UCC-1 financing statements, corporate guaranties and related documents (collectively, the "Loan Documents"), BB&T made commercial loans to Defendants secured by all or substantially all of the assets of Defendants. Defendants are jointly and severally liable to BB&T for the obligations of any of them to BB&T.

In or about April and May of 2014, Events of Default had occurred under (and as defined in) the BB&T Loan Agreement dated October 20, 2011 (the "Revolver Loan Agreement") as a result of Drug Transport's failure to provide financial reporting and violation of borrowing formulas in the Revolver Loan Agreement. In addition, in May and June of 2014, some of the promissory notes owed to BB&T matured and were not paid at maturity. Then, in the summer of 2014, Drug Transport disclosed to BB&T that management had been intentionally

[1] The facts alleged herein are supported by the Complaint, which has been verified and has the effect of an affidavit in support of this Motion. The loan documents described herein are attached to the Complaint as exhibits.

overstating the quantity and quality of its receivables and its financial performance. On August 1, 2014, BB&T commenced an action in this Court styled *Branch Banking and Trust Company v. DB&D Investments, LLC, Drug Transport, Inc., and DTI Logistics, Inc.*, Civil Action No. 1:14-cv-2498-CC (the "Prior Case"), seeking the appointment of a receiver, entry of a judgment against the defendants in that case, jointly and severally, for the balance of their indebtedness, liabilities and obligations to BB&T, and other relief. On August 8, 2014, with the consent of counsel for the defendants in the Prior Case, an order was entered (*see Docket No. 6*) that conditionally appointed a receiver for the defendants, if the defendants did not file bankruptcy petitions, and also immediately enjoined the defendants from destroying records or transferring assets (except cash spent pursuant to a budget). A few days later, to stay the appointment of a receiver, the defendants in the Prior Case filed voluntary petitions for bankruptcy relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court"), styled *In re Drug Transport, Inc.*, Case No. 14-65621, *In re DTI Logistics, Inc.*, Case No. 14-65623, *In re DB&D Investments, LLC*, Case No. 14-65625, and *In re RSL Leasing, LLC*, Case No. 14-70133.[2] The Bankruptcy Court authorized the joint administration of these bankruptcy cases under Case No. 14-65621-BEM (the "Bankruptcy Case").

---

2 The RSL Leasing chapter 11 case was filed later, in October 2014.

In the Bankruptcy Case, none of the Defendants, and none of the witnesses who testified, disputed the fact that BB&T had received intentionally false collateral and financial reporting from Drug Transport. Bayard Hollingsworth, the Chief Restructuring Officer for Drug Transport at the commencement of its chapter 11 case, testified that beginning prior to 2013 and continuing into 2014, Richard S. Lockwood, Sr. ("Senior Lockwood") and Patrick Ryan, officers of Drug Transport, provided intentionally false collateral information to BB&T and hid from BB&T financial losses being suffered by the business. As a result, BB&T had loaned more money than Drug Transport was entitled to borrow and was faced with insufficient collateral to support the loans that already had been made.

Following about one year of litigation in Bankruptcy Court, Defendants proposed a chapter 11 plan of reorganization.[3] Under the plan, generally, Defendants were required to make monthly payments to their creditors, and they were required to deliver proceeds of certain collateral to BB&T. The most significant payment obligations owed to BB&T were described as the treatment of "Class 1F" (page 15 of the Plan), pursuant to which Drug Transport was required to make monthly payments in excess of $71,000 to BB&T. The plan also provided that all of the terms and conditions of the Loan Documents remained in effect

3 A true and correct copy of the chapter 11 plan is attached to the Complaint at Exhibit 30.

"except as expressly modified" (*i.e.,* payment terms)[4] by the chapter 11 plan, that "the obligations of Drug Transport and the other Debtors to BB&T are all cross defaulted and cross collateralized,"[5] and that after any default under the Plan, BB&T has the right to "[seek] the appointment of a receiver for the Debtors and the BB&T Collateral."[6] Finally, the Plan appointed Mark Smith, a turnaround professional and the proposed receiver under this Motion, as "Debtor Financial Manager" with monitoring and oversight authority over Defendants.[7] The chapter 11 plan was confirmed by the Bankruptcy Court and the Bankruptcy Case was closed in or about October of 2015.

Within a few months, Defendants began missing payments to creditors under the chapter 11 plan, including BB&T and Ryder Truck Rental. Defendants never were able to achieve the financial projections that they submitted in connection with their reorganization plan. BB&T sent written notice of default to Defendants on June 29, 2016, and September 19, 2016, and provided an opportunity for Defendants to cure the payment defaults. By September of 2016, it became apparent that Defendants were more than $1 million in arrears in payments to creditors under the chapter 11 plan. Defendants, acting through Lockwood Junior,

---

4 Plan at p. 15.

5 Plan at p. 16.

6 Plan at p. 18.

7 Plan at section 2.1.32 (definition of "Debtor Financial Manager") and section 6.5.2 (duties of Debtor Financial Manager).

made the decision to cease operations, wind down the business, and liquidate the assets of Defendants, and that wind down process has commenced.

## III. ARGUMENT AND CITATIONS OF AUTHORITY

### A. BB&T Has Satisfied the Requirements to Obtain the Appointment of a Receiver.

Federal law governs the appointment of receivers in diversity cases as well as in cases involving federal questions. *E.g., National Partnership Investment Corporation v. National Housing Development Corporation*, 153 F.3d 1289 (11th Cir. 1998); *Marolax Handels-Und Verwaltungsgesellschaft MBH v. 898 5th Ave. S. Corp.*, 2:06CV691-FTM-29SPC, 2009 WL 1660036 at *1 (M.D. Fla. 2009) (citing Fed. R. Civ. P. 66 and *Natl P' ship Inv. Corp. v. Natl Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir.1998)). In considering a request for appointment of a receiver, federal courts have looked at a range of factors, including the following:

- the plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property. *See Bookout v. First Nat. Mortgage & Discount Co.*, 514 F.2d 757, 758 (5th Cir. 1975);

- imminent danger that property will be lost or squandered. *See Gordon v. Washington*, 295 U.S. 30, 37-39, 55 S. Ct. 584, 588-89, 79 L. Ed. 1282 (1935); *Garden Homes, Inc. v. United States*, 200 F.2d 299, 301 (1st Cir. 1952);

- the inadequacy of available legal remedies. *See Leighton v. One William St. Fund, Inc.*, 343 F.2d 565, 568 (2nd Cir. 1965);

- the probability that harm to the plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment. *See Mintzer*, 263 F.2d 823 (3rd Cir. 1959);
- fraudulent conduct on the part of the defendant. *See Burnite Coal Brigquette Co. v. Riggs*, 274 U.S. 208, 212, 47 S. Ct. 578, 579 L. Ed. 1002 (1927); and
- whether the interests of the plaintiff and others sought to be protected will in fact be well served by the receivership. *See Commodity Futures*, 481 F.Supp. 438, 441 (D.C. Mass. 1979).

*See generally, Consolidated Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 326-327 (1st Cir. 1988).

"Federal courts have applied a number of factors to determine whether to appoint a receiver. The factors include whether there has been fraud, whether there is imminent danger that the property will be lost, the inadequacy of legal remedies, the probability that harm to the plaintiff by denial of appointment will be greater than the injury to the defendant, the likelihood of success on the merits, whether the plaintiff's interest may be irreparably injured without an appointment, and whether the interests of all will be well served by a receivership." *Cadence Bank, N.A. v. Manausa Holdings, LLC*, 4:12CV38-WS/WCS, 2012 WL 1252494 at *3 (N.D. Fla. 2012), report and recommendation adopted, 4:12CV38-WS, 2012 WL 1251981 (N.D. Fla. 2012) (citations omitted). Federal courts also routinely appoint receivers as a matter of contractual right. *Id.* at * 4; *see also U.S. v. Am. Nat'l Bank & Trust Co. of Chicago*, 573 F. Supp. 1317, 1318 (N.D. Ill. 1983)

(courts have consistently read contractual provisions authorizing appointment of receiver to permit the appointment of a receiver); *Garden Homes, Inc. v. U.S.*, 207 F.2d 459, 459–60 (1st Cir.1953) (upon prima facie evidence of default, court was empowered to appoint a receiver in accordance with the express terms of the mortgage); *Fed. Nat. Mortg. Ass'n v. Maple Creek Gardens, LLC*, 09-14703, 2010 WL 374033 at **2-3 (E.D. Mich. 2010) (finding that defendant's agreement in mortgage to the appointment of a receiver to take and maintain full control of mortgage property upon defendant's default "alone is sufficient to conclude that [plaintiff] is entitled to such appointment"); *U.S. v. Mountain Vill. Co.*, 424 F.Supp. 822, 825 (D. Mass. 1976) (holding that "the plaintiff is entitled to the appointment of a receiver in accordance with the terms of the mortgage agreement"); *Wells Fargo Bank, N.A. v. Walnut Eq. Partners, LLC*, CIV.A. 10-10287-PBS, 2010 WL 1065004 at *2 (D. Mass. 2010) (under the express terms of the parties' agreements, bank was entitled to obtain a court-appointed receiver to take possession of the defendants' property in Massachusetts and to "hold, manage, lease and operate" such property as deemed appropriate by bank).

In this instance, the Court may appoint a receiver as a matter of enforcing a prior agreement of Defendants, without even needing to evaluate the state of Defendants' business. Defendants have agreed that BB&T is entitled to the appointment of a receiver by virtue of three different kinds of agreements. First,

deeds to secure debt executed by DB&D contain broad consents to the appointment of a receiver, providing that "if a default shall have occurred and be continuing, [BB&T], upon application to a court of competent jurisdiction, shall be entitled as a matter of right without notice and without regard to the occupancy or value of any security for the indebtedness or the solvency of any party bound for its payment, to the appointment of a receiver . . . ."[8] Second, in the consent order entered in the Prior Case,[9] counsel for Drug Transport, DB&D and Logistics agreed that a receiver would be appointed, subject only to the automatic stay that would preclude such an appointment if bankruptcy cases were filed. Those bankruptcy cases were filed, they concluded, the automatic stay terminated in 2015, and the prior consent to the appointment of a receiver should be applied to this Motion. Third, the chapter 11 plan itself contains an agreement by Defendants that after default, BB&T may seek appointment of a receiver for any or all of Defendants and BB&T's collateral.[10] Reading the Loan Documents, the consent order in the Prior Case, and the chapter 11 plan of reorganization together,

---

8 *See* Exhibit 6 to Complaint at p. 4, end of section 19. There are similar consents in other deeds to secure debt in favor of BB&T. *See, e.g.*, Exhibit 3 to Complaint at p. 10 (upon an event of default, BB&T is entitled to the appointment of a receiver "without notice" and "as a matter of right").

9 *Branch Banking and Trust Company v. DB&D Investments, LLC, Drug Transport, Inc., and DTI Logistics, Inc.*, Civil Action No. 1:14-cv-2498-CC, at Docket No. 6.

10 Plan at p. 18.

Defendants have agreed that BB&T is entitled to the appointment of a receiver under these circumstances.

Further, the evidence is overwhelming in this case as to the probability of BB&T's success on the merits. There is no question that Defendants are in default under the Loan Documents and the chapter 11 plan and that Defendants' indebtedness to BB&T is due and immediately payable. There is ample evidence to support the conclusion that there is imminent danger to the property interests of BB&T and the possibility of irreparable injury to those interests in the absence of the appointment of a receiver. Defendants have decided to cease operations and do not have the resources to preserve and protect BB&T's collateral. Defendants' inability to safeguard the collateral threatens to injure the substantial property interests of BB&T. To have Lockwood Junior continue in control over these assets is not acceptable, considering the history of misrepresentations made by management of these Defendants. Substantial opportunities for bad decision making by management (whether due to negligence, inexperience or self-dealing) exist in connection with the liquidation of these companies, and an experienced professional who has no allegiances to the Lockwood family needs to take over.

Under these circumstances, the appointment of a receiver is an appropriate remedy, and the probability of harm to BB&T in the event of the denial of the appointment of receiver would be substantially greater than any potential injury

caused by the appointment. Given the financial distress of Defendants, the appointment of a receiver provides the only logical course of action in order to effectively address these issues. Any attempt to address the situation through "piecemeal" state law remedies over an extended period of time and in multiple jurisdictions in which Defendants' business has operated would be wholly inadequate to effectively protect the property interests of BB&T and would risk loss of and harm to the collateral. In contrast, the appointment of a receiver in accordance with the Proposed Order would not only be in the best interest of BB&T's collateral, but also in the best of interests of other creditors of Defendants. Any other form of remedy would be wholly inadequate.

**B. The Court Should Grant Related Injunctive Relief.**

To assist the receiver in the performance of his duties and to insure the effectiveness of the receivership order, BB&T also respectfully requests the entry of injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure in aid of the receivership. Generally, the injunctive relief requested would require Defendants to cede to the receiver the authority to operate Defendants and protect, preserve and dispose of Defendants' assets for the benefit of creditors. The prerequisites for issuance of a preliminary injunction are "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the

threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *U.S. v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983). The Complaint and the facts of this case demonstrate convincingly that there is a substantial likelihood of success by BB&T on the merits of its claim, that there is a substantial likelihood of irreparable harm or injury to BB&T, and that BB&T has no adequate remedy at law.

In summary, the requested injunctive relief will permit the orderly wind down of Defendants' business and help maximize the value of Defendants' assets for the benefit of all stakeholders. It is customary and supplements the powers granted to the receiver. *See, e.g., S.E.C. v. Byers*, 592 F. Supp. 2d 532, 536 (S.D.N.Y. 2008), *aff'd*, 609 F.3d 87 (2nd Cir. 2010) (reviewing circuit court authority and concluding that injunctive relief to prevent creditors from interfering with receivership assets is appropriate). Accordingly, BB&T respectfully requests that the Court enter the Proposed Order.

## IV. <u>REQUEST FOR IMMEDIATE HEARING</u>

For the reasons stated herein, including the fact that Defendants have decided to cease operations and do not have sufficient resources to preserve and protect BB&T's collateral, BB&T respectfully requests an immediate or expedited

hearing on this motion pursuant to Rule 7.2.B of the Local Rules for the Northern District of Georgia.

## V. CONSOLIDATED MOTION AND MEMORANDUM OF LAW

For purposes of Rule 7.1 of the Local Rules for the Northern District of Georgia, BB&T respectfully requests the Court to treat this pleading both as a motion and as a memorandum of law in support thereof.

## VI. PROPOSED SELECTION OF RECEIVER

BB&T respectfully requests that the Court appoint Mark Smith of Vantage Point Advisory, Inc., as the receiver in this case. As more fully explained in the summary attached hereto as Exhibit B, Mr. Smith is well qualified to serve in this position. He is an Atlanta-based financial consultant with significant experience dealing with financially troubled companies, including orderly liquidations.

Mr. Smith initially was brought in by Defendants in October of 2014 to act as Chief Restructuring Officer in the Bankruptcy Case, with the approval of the Bankruptcy Court.[11] Considering the evidence of fraud by management that was not disputed in the Bankruptcy Case, the parties in the Bankruptcy Case (including BB&T, the Official Committee of Unsecured Creditors, and the Bankruptcy Court)

---

11 *See* Interim Consent Order Approving Appointment of Mark A. Smith Of Vantage Point Advisory, Inc. as Debtors' Chief Restructuring Officer and Deferring the Requests for the Appointment of a Chapter 11 Trustee (Docket No. 137) entered on October 7, 2014, in Case No. 14-65621-BEM.

required that a professional with unquestionable ethics, integrity and experience be appointed to manage the chapter 11 cases and provide financial reporting that could be trusted. Mr. Smith served in that role from the fall of 2014 through the fall of 2015. After confirmation of the chapter 11 plan of reorganization and the closing of the Bankruptcy Case in October 2015, Mr. Smith has continued to serve as Debtor Financial Manager pursuant to the chapter 11 plan. He has valuable knowledge regarding Defendants, their transactions and their assets that makes him the most efficient and logical candidate to serve as receiver. In short, the creditors of Defendants have already, in other proceedings, expressed their trust and confidence in Mr. Smith, and this Court should appoint him to serve as receiver.

## VII. NOTICE AND POTENTIAL LACK OF OPPOSITION

BB&T does not expect opposition to this Motion but has been unable to locate current counsel for Defendants. Defendants have retained numerous attorneys during the past three years to represent them in the Bankruptcy Case and non-bankruptcy litigation. Many of those attorneys have not been paid amounts owed to them by Defendants.

In an effort to provide as much notice as possible, counsel for BB&T has verbally informed Henry Sewell, Esq., former counsel for the Official Committee of Unsecured Creditors, of BB&T's intent to seek the immediate appointment of a receiver. In addition, BB&T intends to serve a copy of the Complaint (without

exhibits), this Motion and the Proposed Order by electronic mail on Lockwood Junior (the President and sole Director of each Defendant) and five attorneys at five different law firms who have represented Defendants or other interested parties in the past.

## VIII. CONCLUSION

For the above-stated reasons, BB&T respectfully moves the Court to enter the Proposed Order in substantially the form attached hereto as Exhibit A.

Respectfully submitted, this 12th day of October, 2016.

**PARKER, HUDSON, RAINER & DOBBS LLP**
Attorneys for Plaintiff Branch Banking and Trust Company

By: */s/ James S. Rankin, Jr.*
James S. Rankin, Jr.
Georgia Bar No. 594620
Jack C. Basham, Jr.
Georgia Bar No. 041029

303 Peachtree Street NE
Suite 3600
Atlanta, Georgia 30308
Telephone: (404) 523-5300
Email: jrankin@phrd.com
jbasham@phrd.com

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1(D), the undersigned counsel hereby certifies that the foregoing pleading has been prepared in Times New Roman 14 point, one of the fonts and points approved by LR 5.1(B).

Respectfully submitted this 12th day of October, 2016.

**PARKER, HUDSON, RAINER & DOBBS LLP**
Attorneys for Plaintiff Branch Banking and Trust Company

By: */s/ James S. Rankin, Jr.*
James S. Rankin, Jr.
Georgia Bar No. 594620
Jack C. Basham, Jr.
Georgia Bar No. 041029

303 Peachtree Street NE
Suite 3600
Atlanta, Georgia 30308
Telephone: (404) 523-5300
Email: jrankin@phrd.com
jbasham@phrd.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 12, 2016, a true and correct copy of the foregoing EMERGENCY MOTION FOR APPOINTMENT OF A RECEIVER AND FOR INJUNCTIVE RELIEF AND MEMORANDUM OF LAW IN SUPPORT was served upon Defendants by electronic mail and hand delivery as follows:

Drug Transport, Inc., DB&D Investments, LLC,
DTI Logistics, Inc., and RSL Leasing, LLC
1939 Forge Street
Tucker, GA 30084-6609
Attn: Mr. Richard S. Lockwood, Jr., President and sole Director
E-mail: rickl@drugtransport.com

This 12th day of October, 2016.

*/s/ James S. Rankin, Jr.*
James S. Rankin, Jr.
Georgia Bar No. 594620

Parker, Hudson, Rainer & Dobbs LLP
303 Peachtree Street NE
Suite 3600
Atlanta, Georgia 30308
Telephone: (404) 523-5300
Email: jrankin@phrd.com

# EXHIBIT A

*Draft -- Subject to Change*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **BRANCH BANKING AND TRUST COMPANY,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION FILE** |
| | ) | **NO. ________________** |
| **DRUG TRANSPORT, INC., DB&D INVESTMENTS, LLC, DTI LOGISTICS, INC., and RSL LEASING, LLC,** | ) | |
| **Defendants.** | ) | |

**ORDER APPOINTING RECEIVER AND**
**ENJOINING DEFENDANTS AND OTHERS**

THIS MATTER is before the Court on the Verified Complaint for Damages, Appointment of a Receiver, and Injunctive Relief (the "**Complaint**") and accompanying Emergency Motion for Appointment of a Receiver and for Injunctive Relief and Memorandum of Law in Support (the "**Motion**") filed by Plaintiff **BRANCH BANKING AND TRUST COMPANY**, a North Carolina banking corporation ("**Plaintiff**"). It appears that due and sufficient notice of the

Complaint and Motion have been given to the Defendants **DRUG TRANSPORT, INC.** ("**Drug Transport**"), **DB&D INVESTMENTS, LLC f/k/a DB&D Investments, a Georgia general partnership** ("**DB&D**"), **DTI LOGISTICS, INC.** ("**Logistics**"), and **RSL LEASING, LLC** ("**RSL**"; and together with Drug Transport, DB&D and Logistics, collectively, "**Defendants**"; and each individually, a "**Defendant**").

Having read and considered the Complaint and Motion, the arguments and statements of counsel having been presented and considered, and it appearing that venue and jurisdiction are proper in this Court and the relief requested is necessary to prevent irreparable harm and injury to Plaintiff's rights and the Collateral (defined below) as to which Plaintiff has no adequate remedy at law, the Court hereby makes the following findings of fact and conclusions of law:

**Findings of Fact**

A. Plaintiff has extended credit and other financial accommodations to or for the benefit of Defendants pursuant to series of loan documents, including, without limitation, that certain BB&T Loan Agreement dated July 28, 2006, among Plaintiff, Drug Transport and DB&D, and that certain BB&T Loan Agreement dated October 20, 2011, between Plaintiff and Drug Transport



3389191_4

(collectively, as at any time amended, modified, restated or supplemented, the **"Loan Agreements"**).

B. Defendants' indebtedness to Plaintiff under the Loan Agreements is evidenced by a series of promissory notes executed by Defendants to the order of Plaintiff, including (i) that certain BB&T Promissory Note dated July 22, 2005 (as at any time amended, modified, restated, renewed or supplemented, **"Note 2"**), executed by DB&D to the order of Plaintiff in the original principal amount of $320,000, (ii) that certain BB&T Promissory Note dated June 28, 2006 (as at any time amended, modified, restated, renewed or supplemented, **"Note 9"**), executed by DB&D to the order of Plaintiff in the original principal amount of $1,252,000, (iii) that certain BB&T Promissory Note dated June 28, 2006 (as at any time amended, modified, restated, renewed or supplemented, **"Note 10"**), executed by DB&D to the order of Plaintiff in the original principal amount of $148,000, (iv) that certain Amended and Restated Commercial Promissory Note dated June 28, 2006 (as at any time amended, modified, restated, renewed or supplemented, **"Note 11"**), executed by DB&D to the order of Plaintiff in the original principal amount of $900,000, (v) that certain BB&T Promissory Note dated October 20, 2011 (as at any time amended, modified, restated, renewed or supplemented, **"Note 17"**), executed by Drug Transport to the order of Plaintiff in the original principal

amount of $4,200,000, and (vi) that certain BB&T Promissory Note dated July 18, 2012 (as at any time amended, modified, restated, renewed or supplemented, "**Note 18**" and together with Note 2, Note 9, Note 10, Note 11 and Note 17, the "**Notes**"), executed by DB&D, Drug Transport and Logistics, jointly and severally, to the order of Plaintiff in the original principal amount of $719,882.14.

C. In addition, Defendants are indebted to Plaintiff for amounts owing with respect to the use of corporate credit cards issued by Plaintiff for the use and benefit of Drug Transport (the "**Credit Card Obligations**").

D. To secure the indebtedness owing by Defendants to Plaintiff, Defendants executed the following guaranties in favor of Plaintiff (collectively, the "**Guaranties**"):

- The BB&T Guaranty Agreement dated October 21, 2013, pursuant to which DB&D guaranteed the full and timely payment and performance of all obligations owed by Drug Transport to Plaintiff;
- The BB&T Guaranty Agreement dated June 21, 2013, pursuant to which Drug Transport guaranteed the full and timely payment and performance of all obligations owed by DB&D to Plaintiff;

- The BB&T Guaranty Agreement dated June 21, 2013, pursuant to which Logistics guaranteed the full and timely payment and performance of all obligations owed by DB&D to Plaintiff; and
- The BB&T Guaranty Agreement dated June 24, 2013, pursuant to which RSL guaranteed the full and timely payment and performance of all obligations owed by DB&D to Plaintiff.

E. The indebtedness, liabilities and obligations of Defendants under the Loan Documents (as defined below) are secured by liens granted by Defendants to Plaintiff in the following tracts of real property (hereinafter referred to collectively as the "**Real Property Collateral**"):

- The real property, improvements and fixtures located at 2600 Republic Boulevard, Birmingham, Jefferson County, Alabama, as fully described in that certain Mortgage of Real Estate and Security Agreement executed by DB&D in favor of Plaintiff dated July 22, 2005, recorded on March 31, 2006, at Deed Book LR200606, Page 4144, in the real estate records of Jefferson County, Alabama (the "**Jefferson County Records**") and that certain Mortgage of Real Estate and Security Agreement executed by DB&D in favor of Plaintiff dated July 22, 2005, recorded on March 31, 2006, at Deed

Book LR200606, Page 4156, Jefferson County Records (collectively, at any time amended, modified, restated or supplemented, the **"Jefferson County Security Deed"**); and

- The real property, improvements and fixtures located at 1939 Forge Street, Tucker, DeKalb County, Georgia, as fully described in that certain Georgia Security Deed and Security Agreement executed by DB&D in favor of Plaintiff dated June 28, 2006, recorded on July 12, 2006, at Deed Book 18918, Page 779, DeKalb County Records (as at any time amended, modified, restated or supplemented, the **"Forge Street Security Deed"** and together with the Jefferson County Security Deed, the **"Security Deeds"**).

F. By virtue of the Security Deeds, Plaintiff has fully perfected liens upon the Real Property Collateral.

G. To further secure the indebtedness, liabilities and obligations owing by Defendants to Plaintiff, and pursuant to those certain BB&T Security Agreements dated June 28, 2006 and October 20, 2011 (collectively, as at any time amended, modified, restated or supplemented, the **"Drug Transport Security Agreement"**), executed by Drug Transport in favor of Plaintiff, Drug Transport granted Plaintiff security interests in all of the following personal property of Drug

Transport, whether then owned or thereafter acquired and wherever located (collectively, the "**Drug Transport Personal Property Collateral**"):

- accounts (including all contract rights and health care insurance receivables);
- equipment (including all accessions thereto and all manufacturer's warranties, parts and tools therefor);
- general intangibles (including all payment intangibles, copyrights, trademarks, patents, tradenames, tax refunds, company records, paper and electronic, rights under equipment leases, warranties, and software licenses);
- supporting obligations; and
- all proceeds (cash and non-cash) and products of the foregoing.

H. To further secure the indebtedness, liabilities and obligations owing by Defendants to Plaintiff, and pursuant to that certain BB&T Security Agreement dated July 18, 2012 (as at any time amended, modified, restated or supplemented, the "**Logistics Security Agreement**"), executed by Logistics in favor of Plaintiff, Logistics granted Plaintiff security interests in the following personal property of Logistics, whether then owned or thereafter acquired and wherever located (collectively, the "**Logistics Personal Property Collateral**"):

- accounts (including all contract rights and health care insurance receivables);
- general intangibles (including all payment intangibles, copyrights, trademarks, patents, tradenames, tax refunds, company records, paper and electronic, rights under equipment leases, warranties, and software licenses);
- supporting obligations; and
- all proceeds (cash and non-cash) and products of the foregoing.

I. To further secure the indebtedness, liabilities and obligations owing by Defendants to Plaintiff, and pursuant to that certain Security Agreement dated July 14, 2015 (as at any time amended, modified, restated or supplemented, the "**RSL Security Agreement**"; and together with the Drug Transport Security Agreement and the Logistics Security Agreement, the "**Security Agreements**"), executed by RSL in favor of Plaintiff, RSL granted Plaintiff security interests in substantially all of the personal property of RSL, whether then owned or thereafter acquired and wherever located (collectively, the "**RSL Personal Property Collateral**"; and together with the Drug Transport Personal Property Collateral and the Logistics Personal Property Collateral, the "**Personal Property Collateral**"; and together with the Real Property Collateral, the "**Collateral**"). The Loan

Agreements, the Notes, the Guaranties, the Security Deeds, the Security Agreements and all other agreements, instruments and documents executed at any time by any Defendant in connection with any of the foregoing, as such agreements, instruments and documents may be amended, modified, restated, renewed or supplemented at any time, are hereinafter referred to collectively as the **"Loan Documents."**

J. Plaintiff filed UCC-1 financing statements in the appropriate jurisdictions naming Drug Transport, Logistics and RSL as the debtors and describing the Personal Property Collateral.

K. Beginning in May and June, 2014, and continuing into July, 2014, Events of Default under (and as defined in the Loan Agreements) occurred and were continuing, and Plaintiff notified Defendants of these continuing Events of Default.

L. By letter dated July 31, 2014, Plaintiff provided Defendants written notice of the continuing existence of Events of Default under the Loan Documents, accelerated the maturity of all of the indebtedness, liabilities and obligations owing by Defendants to Plaintiff, which became immediately due and payable, and notified Defendants of Plaintiff's intention to seek the appointment of a receiver.

M. On August 1, 2014, Plaintiff commenced an action in this Court styled Branch Banking and Trust Company v. DB&D Investments, LLC, Drug Transport, Inc., and DTI Logistics, Inc., Civil Action No. 1:14-cv-2498-CC (the "**Prior Case**"), seeking the appointment of a receiver, entry of a judgment against the defendants in that case, jointly and severally, for the balance of their indebtedness, liabilities and obligations to Plaintiff, and other relief.

N. On August 11, 2014, and October 10, 2014, Defendants filed voluntary petitions for bankruptcy relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia (the "**Bankruptcy Court**"), styled as In re Drug Transport, Inc., Case No. 14-65621, In re DTI Logistics, Inc., Case No. 14-65623, In re DB&D Investments, LLC, Case No. 14-65625, and In re RSL Leasing, LLC, Case No. 14-70133. The Bankruptcy Court authorized the joint administration of these bankruptcy cases (collectively, the "**Bankruptcy Case**").

O. By Order entered July 14, 2015 (the "**Confirmation Order**"), the Bankruptcy Court confirmed a chapter 11 plan of reorganization, as amended, for Defendants (the "**Plan**").

P. Under the terms of the Plan, and as modified in the Confirmation Order, as of June 11, 2015, Plaintiff was granted allowed secured claims against Defendants under the Notes and for the Credit Card Obligations.

Q. The Plan set forth the manner in which Defendants' indebtedness to Plaintiff was required to be paid. Generally, Defendants were required under the Plan to make monthly payments to Plaintiff and to deliver to Plaintiff certain proceeds of Collateral.

R. By Order entered October 2, 2015, the Bankruptcy Court closed the Bankruptcy Case, finding that the Plan had been consummated and the bankruptcy estate had been fully administered.

S. Events of Default under (and as defined in) the Plan have occurred and are continuing on account of, among other defaults by Defendants, (a) the failure of Defendants to make timely payments to Plaintiff (i) in respect of Plaintiff's Class 1F Claim (Note 17), which was to paid in equal monthly installments in the amount of approximately $75,067.14, and is past due, and (ii) in respect of Plaintiff's Class 1H Claim (Credit Card Obligations), which was to be paid in equal monthly installments of approximately $1,422.71, and is past due, and (b) the failure of Defendants to remit to Plaintiff as and when received all of the Kodasco Rent and all of the CFL Rent (in each case, as such terms are defined

in the Plan). As of September 19, 2016, the past-due indebtedness owing by Defendants with respect to the Class 1F Claim (Note 17) and the Class 1H Claim (Credit Card Obligations) totaled $766,321.21.

T. Plaintiff notified Defendants of continuing Events of Default and provided an opportunity for Defendants to cure under the Plan. Defendants have failed to cure the Events of Default within the time permitted under the Plan.

U. Plaintiff has accelerated the maturity of all principal, interest, fees (including, without limitation, attorneys' fees), costs and other amounts chargeable to Defendants under the Loan Documents (collectively, the "**Obligations**"), the Obligations are immediately due and payable, and Plaintiff has demanded payment of all Obligations from Defendants. Plaintiff is entitled to exercise any and all of its rights and remedies under the Loan Documents and applicable law to collect the Obligations and to realize upon the Collateral.

V. Defendants' financial problems have intensified and accelerated to the point that there is imminent danger that Plaintiff's interests in the Collateral will be irreparably harmed.

W. In the absence of appointment of a receiver, the Collateral is in danger of immediate and irreparable damage or loss.

## **Conclusions of Law**

(i) Venue and jurisdiction are proper in this Court.

(ii) Plaintiff has no adequate remedy at law to prevent potential irreparable harm and injury to its rights under the Plan and the Loan Documents and with respect to the Collateral, and therefore, Plaintiff is entitled to the relief prayed for in the Complaint and Motion as hereinafter provided.

(iii) Adequate notice of the Complaint, the Motion and the relief requested by Plaintiff has been given to Defendants. Among other things, written notice of the Complaint and the Motion has been provided by electronic mail to counsel who represented Defendants in the Prior Case and the Bankruptcy Case.

(iv) No Defendant, and no attorney who appeared on behalf of a Defendant in the Prior Case or the Bankruptcy Case, has opposed the relief requested in the Motion or entry of this Order.

## **Order of the Court**

IT IS ACCORDINGLY HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1. The Motion is hereby GRANTED, as provided herein.

2. Mark Smith be, and hereby is, appointed, without bond, to serve as receiver (in that office and capacity, the "**Receiver**") for Defendants and for all of

the Receivership Assets (as defined below), all of which will form a part of the estate of Defendants that is in receivership (the "**Receivership Estate**"). As used herein, the term "**Receivership Assets**" shall be construed broadly to include all property of Defendants and interests in property of Defendants, whether real or personal, tangible or intangible and wherever located, including, without limitation, all Collateral and all of the types and items of property of Defendants described in paragraph 3 below. Except as otherwise provided herein with respect to actions that may be taken by Plaintiff, the Receiver shall be exclusively authorized to administer the Receivership Estate and to possess, manage, safeguard and dispose of the Receivership Assets, and no officer, director, shareholder, agent or employee of Defendants, nor any other person or entity claiming to have an ownership interest in or control over Defendants, shall have any authority or control over or with respect to the Receivership Estate or any of the Receivership Assets.

3. Subject only to the rights and liens of Plaintiff, the Receiver shall have all powers and rights to administer and manage the Receivership Estate and to assume custody and control over all Receivership Assets (and to the exclusion of all other parties except Plaintiff), including, but not limited to, the following property, whether or not such property constitutes Collateral:

a. all of any Defendant's interests in the Real Property Collateral;

b. all of any Defendant's interests as tenant under any leases of premises owned by any Defendant or any other person at which any Receivership Assets are located (but neither the Receiver nor the Receivership Estate shall be deemed to have assumed any of the obligations under any lease with any other person) and Defendants' interest in any leasehold improvements on any leased premises (all such business premises and improvements being collectively referred to as the "**Facilities**");

c. all of Defendants' inventory, including, without limitation, spare parts, accessories, appliances, engines, fuel, supplies and associated rights (collectively, the "**Inventory**");

d. all items of machinery or equipment owned by Defendants, wherever located, or used by Defendants and located in, on or about the Facilities, including, without limitation, all parts, engines, motor vehicles, computer equipment, office equipment and supplies (collectively, the "**Equipment**");

e. all accounts receivable, promissory notes, payment intangibles, chattel paper, instruments and other rights of Defendants to the payment of money (collectively, the "**Accounts**");

f. all deposit accounts of Defendants (collectively, the "**Deposit Accounts**"), including, without limitation, all checking accounts, savings accounts, payroll accounts, payroll tax accounts, petty cash accounts, and escrow accounts;

g. all business records of Defendants, in whatever form or media maintained (collectively, the "**Records**"), including, but not limited to, electronic mail, texts, or digital messages of any type or kind on any computer device owned, leased or used by any of the Defendants, and all documents evidencing ownership of any Receivership Assets (including bills of sale and certificates of title), books of accounts, financial statements, balance sheets, ledgers, expense statements, logs (including transport logs), maintenance and servicing records, journals, reports, and other documents and data relating to the past or future use, operation or maintenance of any Receivership Assets;

h. all of Defendants' investment property, including, without limitation, stocks, bonds, and other securities;

i. all insurance policies;

j. all of Defendants' permits, licenses, registrations and certificates (including, without limitation, certificates of registration and re-

registration relating to any motor vehicles) that were issued by governmental authorities or are necessary for the ownership or use of any of the Receivership Assets or the operation of any of the business of Defendants, and the Receiver shall be entitled to operate and to all of the other benefits and privileges arising under all of such permits, licenses, registrations and certificates;

k. all of Defendants' general intangibles, customer lists, and rights under contracts;

l. all causes of action, claims, rights in respect of pending or potential litigation and arbitration proceedings, and judgments owned by or in favor of any Defendant;

m. all patents, trademarks, copyrights and other intellectual property of Defendants;

n. all of Defendants' rent deposits, security deposits and other refundable deposits of money or other property, as well as all of each Defendant's rights to receive rent and storage fees and claims against others for unpaid rent or storage fees;

o. all tax refund claims of Defendants, whether now in existence or hereafter arising; and

p. all rents, income, monies, fees, revenues, proceeds, and profits now existing or hereafter generated from the collection, sale or other disposition of any of the Collateral (collectively, the "**Revenues**").

4. Except as otherwise expressly restricted in this Order, the Receiver shall have and possess all powers, privileges and prerogatives ordinarily provided to receivers under law. In addition, and without limiting the generality of the foregoing, but subject to paragraph 5 below, the Receiver is hereby authorized and empowered to:

a. take immediate possession of, hold and secure all Receivership Assets;

b. manage, control, operate and maintain the Receivership Estate;

c. receive, collect, sue for, settle or compromise all Accounts, Revenues and other Receivership Assets;

d. conduct all aspects of any business operations of Defendants, including, without limitation, continuation or termination of any service or employment arrangement or contract (including, without limitation, any and all shareholder, officer and severance agreements and contracts to which any Defendant is a party), and deliver such notices as the Receiver elects in his

discretion relating to the conduct of such operations (including, without limitation, notices to employees of Defendants);

e. make such ordinary and necessary payments, distributions, and disbursements as the Receiver deems advisable or proper for the marshaling, maintenance or preservation of the Receivership Assets;

f. negotiate with any creditors and contract counterparties of Defendants for the purpose of compromising or settling any claim, including, without limitation, the surrender of assets to secured creditors;

g. renew, cancel, terminate, or otherwise adjust any pending lease agreements to which any Defendant is a party;

h. institute, defend, compromise or adjust such actions or proceedings in state or federal courts now pending and hereafter instituted, as the Receiver in his discretion may deem to be advisable for the protection and administration of the Receivership Estate;

i. institute actions, suits or other proceedings to obtain possession or custody of or control over any Receivership Assets, to pursue causes of action held by any Defendant, and to collect any amounts owed to any Defendant, including, but not limited to, accounts receivable, whether any

such suits or proceedings are instituted in this Court or any other court or tribunal having competent jurisdiction;

j. execute any necessary documents to allow the Receiver to take possession of and control of, and to draw checks on, any Deposit Accounts and to open bank accounts or other depository accounts, in the name of the Receiver on behalf of the Receivership Estate, provided that the Receiver shall provide Plaintiff with at least five (5) business days prior notice before opening any new bank or other depository account unless Plaintiff consents in writing to a shorter period;

k. prepare tax returns and related documents regarding the assets and operation of the Receivership Estate;

l. file such reports and documents with federal, state and local officials as are required or are deemed by the Receiver to be necessary or appropriate in connection with the operation of Defendants' businesses;

m. abandon any Receivership Assets (other than the Collateral, except as hereinafter provided) that, in the exercise of the Receiver's business judgment, are burdensome to the Receivership Estate;

n. engage attorneys, accountants, appraisers, brokers, auctioneers, environmental experts, and other consultants and experts (collectively, the

"**Professionals**"), on terms and conditions acceptable to Plaintiff, to assist the Receiver in the performance and discharge of his rights, powers, and duties hereunder and to pay such Professionals reasonable retainers and their fees and expenses as such become due and payable, provided, however, that prior to any such payment by the Receiver to a Professional, the Receiver shall provide copies of the Professional's invoices to Plaintiff, who shall have a period of ten (10) business days after receipt of an invoice within which to send a written objection to payment to the Receiver, and if an objection is timely made by Plaintiff, the fees and expenses that are subject to the objection shall not be paid except upon the subsequent written consent of Plaintiff or further order of this Court;

o. subject only to the requirements and limitations in this Order, sell, lease or otherwise dispose of any of the Receivership Assets in or outside of the ordinary course of business, as a going concern or as part of an orderly liquidation, or in such public auctions or private sales as the Receiver may deem appropriate, and execute and deliver such bills of sale, deeds, affidavits and other related documents in order to transfer any or all of any Defendant's right, title and interest in and to any of the Receivership Estate to any purchaser thereof;

p. pay from the Revenues (to the extent agreed by Plaintiff) or Protective Advances (defined below) the expenses of the Receivership Estate, including, without limitation, expenses for rent, utilities (gas, electric and water), supplies, wages and salaries, taxes (payroll, sales and personal property ad valorem), ordinary and necessary repairs and maintenance to any of the Receivership Estate, and the Receiver's hourly fees;

q. deal with all existing and prospective subcontractors, vendors, suppliers, distributors, customers, licensors, licensees, landlords, tenants and subtenants of Defendants, including, without limitation, by way of negotiating and executing leases, licenses, and other agreements and any amendments, renewals, extensions, modifications, or waivers of any leases, licenses, or other agreements between any Defendant and any existing or prospective subcontractors, vendors, suppliers, distributors, customers, licensors, licensees, landlords, tenants and subtenants of Defendants;

r. receive, open, read, and respond to all mail or electronic mail, texts, or digital messages of any type or kind addressed to any Defendant or to any officers, directors, employees or agents agent of any Defendant (if sent to them in their capacity as such officer, director, employee or agent, and not in their individual capacity), and any and all Defendant employees,

third parties, vendors, or independent contractors which provide any information technology or related services for the Defendants are authorized and directed to assist the Receiver in obtaining complete access to any and all electronic mail, texts, or digital messages of any type or kind sent to the Defendants, provided that if the Receiver receives and reviews communications to any Defendant or to any agent or employee of any Defendant that are marked confidential, attorney-client privileged or similarly restricted, he shall maintain the confidentiality of such communications and neither his receipt nor his review of any such communications shall be deemed a waiver of any attorney-client privilege or similar protection that otherwise applies;

s. provide a written statement by the 20th day of each month (for the prior month) of cash receipts and cash disbursements to Plaintiff as well as any other reports and budgets reasonably requested by Plaintiff or required by the Court;

t. request and receive from Defendants' outside accountants and auditors (collectively, the "**Auditors**") all records and information relating to Defendants' financial performance and condition in 2013, 2014, 2015 and 2016, for the purpose of, among other things, filing amended tax returns for

each Defendant and seeking any tax refund to which any Defendant may be entitled, and such Auditors are hereby authorized and directed to turn over all such records and information to the Receiver;

u. communicate and negotiate with any federal, state or local regulatory or other authority regarding the operation of Defendants' businesses or the issuance or renewal of any permits, licenses, certificates or registrations in connection therewith; and

v. take such other action as may be approved by this Court.

In addition to the powers and instructions set forth hereinabove, the Receiver shall have all of the powers of a receiver that are authorized by law and all other powers necessary or proper to preserve and liquidate the Receivership Estate, including, without limitation, the Collateral, and to perform obligations and exercise rights and remedies under existing agreements between or among any Defendant and any third party.

5. Notwithstanding anything to the contrary in this Order, the Receiver shall not be authorized to sell, lease, license, encumber, collect, compromise or otherwise dispose of, or use the proceeds of, any part of the Collateral without the prior express consent of Plaintiff, which consent may be given or withheld in Plaintiff's sole and absolute discretion and may, if so elected by Plaintiff, be

conditioned upon Plaintiff's agreement as to the timing, method, manner and terms of any sale, lease, encumbrance, compromise or other disposition of any Collateral; and except as otherwise agreed in writing by Plaintiff, the Receiver shall in all events promptly account for and turn over to Plaintiff, for application to the Obligations, all cash and non-cash proceeds received in connection with any sale, lease, collection or other disposition of any Collateral.

6. The Receiver shall be empowered, but is not required, to file on behalf of any Defendant a voluntary petition for relief under any chapter of Title 11 of the United States Code (11 U.S.C. § 101 *et seq.*, the "**Bankruptcy Code**"). In the event that the Receiver files a voluntary petition under Chapter 11 of the Bankruptcy Code (each a "**Chapter 11 Case**") for any Defendant, the Receiver shall have the sole and exclusive power and authority to manage and direct the business and financial affairs of such Defendant in connection with the Chapter 11 Case and any proceedings arising under or related thereto, and such Defendant, under the management and direction of Receiver, shall be deemed a debtor-in-possession under Chapter 11 of the Bankruptcy Code and may prosecute and defend such motions, adversary proceedings and other matters as may be permitted under the Bankruptcy Code or applicable law. Without further order of this Court, no officer, director, employee, shareholder, agent or other person, other than the

Receiver, shall be authorized to seek any relief under the Bankruptcy Code on behalf of any Defendant.

7. Except with respect to lockboxes and other payment addresses in the control of Plaintiff to which account debtors of Defendants make payments in respect of Accounts, the Receiver is hereby authorized to notify the United States Postal Service to forward any mail addressed to Defendants to any Post Office box or other mail depository. Further, the Receiver is authorized to open and inspect all such mail and to determine the location or identity of assets or the existence and amount of claims.

8. Subject to the rights and liens of Plaintiff as set forth in this Order, the Receiver may sell any or all of the Receivership Assets, including, without limitation, any of the Collateral (with the consent of Plaintiff) by one or more public or private sales, as determined by the Receiver in the exercise of his sound business judgment on such terms and conditions as the Receiver determines to be in the best interests of the Receivership Estate, without the necessity of the Receiver having obtained any appraisal of any of the Receivership Assets that are to be the subject of a sale. Without limiting the generality of the foregoing, to the extent that the Receiver elects to sell any of the Receivership Assets by one or more public sales as provided in 28 U.S.C. §§ 2001 and 2004, the Receiver, in the

exercise of his discretion and business judgment, may determine the terms, conditions and procedures for the conduct of any such public sale, including, without limitation, (i) identification of the Receivership Assets to be sold, (ii) the requirements that any person or entity must satisfy to participate in the auction, and (iii) the time, date, and manner of any such auction sale.

9. With respect to a proposed sale of any Collateral, Plaintiff shall have the right to veto any sale on terms that are not satisfactory to it, in which event the Receiver shall have the option to abandon such Collateral from the Receivership Estate to Plaintiff for foreclosure or other realization by Plaintiff in accordance with the Loan Documents and applicable law, and the Receiver, for itself and Defendants, shall be deemed to have waived any notices of proposed disposition by Plaintiff of any of the Collateral otherwise required by applicable law.

10. The Receiver shall be authorized to request and receive from Plaintiff from time to time advances of funds (collectively, "**Protective Advances**") that are necessary for the Receiver's operation of Defendants' businesses or the management, maintenance, marketing, sale, safeguarding, insurance, operation or repair of the Collateral or other Receivership Assets, including, without limitation, payroll and payroll taxes, premiums for insurance and amounts needed to make necessary and essential repairs to the Facilities, all of which Protective Advances

by Plaintiff shall be deemed Loans under (and as defined in) the Loan Agreements to protect and preserve the Collateral, shall form a part of the Obligations, and shall be secured by all of the liens and security interests granted or conveyed by Defendants to or in favor of Plaintiff. All Protective Advances may be made or not made by Plaintiff at such times and in such amounts as Plaintiff may elect in its sole and absolute discretion.

11. Plaintiff shall be authorized, at any time or times, to enter upon the Facilities (or any other location at which the Receiver maintains any of the Receivership Assets) for the purpose of inspecting the Collateral or any other Receivership Assets, including all Records or Equipment; conferring with officers, employees, or agents of the Receiver; and reviewing and making copies of any and all of the Records and any other documents at any time in the possession, custody or control of the Receiver. The Receiver shall periodically, at such intervals as Plaintiff and the Receiver shall mutually agree upon (but no less frequently than once monthly), provide to Plaintiff and Defendants reports of the Receiver's operations, cash receipts, disbursements and maintenance of the Receivership Estate. In no event shall Plaintiff, by virtue of its exercising any right, power or privilege hereunder, be deemed to be in possession or control of any of the Receivership Estate or to have asserted any supervisory control or decision-making

authority with respect to the management, operation, protection or maintenance of any Receivership Assets, and Plaintiff shall not be deemed to have assumed any obligation under any Defendant's agreement with any third party and shall not be liable for the use, maintenance, repair, or operation of any of the Receivership Estate. All officers, attorneys and authorized representatives of Defendants shall be entitled to review, inspect and copy any of the Records during normal business hours, upon written request to the Receiver with adequate advanced notice and at their own expense.

12. Each Defendant and each of its officers, directors, agents, attorneys and employees, all other persons acting at the direction of any Defendant, and each other person or entity receiving notice of this Order by service or otherwise (but specifically excluding Plaintiff), are hereby ordered immediately to (i) turn over to the Receiver possession of all of the Receivership Assets, including, but not limited to, the Collateral and the Records; (ii) pay over to the Receiver all cash and all funds and deposits in any Deposit Accounts or investments of any Defendant, except for funds required to pay checks for expenses of any Defendant that have been issued on or before the date of entry of this Order but have not yet been presented for payment; (iii) turn over to the Receiver all keys and entry cards to all buildings, safes, deposit boxes, or other safeguarded places in, on or about the

Facilities and all other tangible or intangible items of Receivership Assets; and (iv) cooperate with the Receiver in identifying and locating Receivership Assets, transitioning the operations of any Receivership Assets to the Receiver, and identifying and investigating any causes of action of any Defendant. Notwithstanding the foregoing, all proceeds of Collateral shall be remitted by the Receiver (or any other person or entity in possession thereof) to Plaintiff for application to the Obligations except as otherwise agreed by Plaintiff in writing.

13. The Receiver may, in his discretion and for the purpose of maintaining going-concern value of any Receivership Assets, permit officers or employees of Defendants to collect, sell, possess, manage, protect, market and otherwise deal with some or all of the Receivership Assets on such terms, and subject to such limitations and conditions, as the Receiver deems appropriate, but in all events subject to the prior written consent of Plaintiff and the other provisions of this Order requiring a turnover to Plaintiff, for application to the Obligations, of proceeds of the Collateral.

14. During the pendency of this Receivership, absent express permission of this Court, all actions by any creditors, lessors, landlords, taxing authorities and other persons and entities seeking money damages, dispossession or repossession of Receivership Assets or other relief from any Defendant or the Receivership

Estate and all others acting on behalf of any such creditors and other persons, including sheriffs, marshals, and all officers and deputies, and their respective attorneys, servants, agents and employees, are, until further order of this Court, hereby stayed. Further, except for Plaintiff, all persons and entities who have or receive notice of this Order, including (i) Defendants (and all officers, directors, employees and agents of Defendants), (ii) all creditors of Defendants, and (iii) all persons or entities acting at the direction or on behalf of any of the persons described in clauses (i) or (ii), including, without limitation, sheriffs, marshals, and all officers and deputies, and their respective attorneys, servants, agents and employees, are hereby **RESTRAINED AND ENJOINED** from (a) destroying, concealing, using, collecting, taking possession of, transferring, asserting dominion or control over, repossessing, seizing, attaching, garnishing, executing upon, or seeking to impose a judicial lien upon any Receivership Assets, (b) otherwise interfering with the possession, custody, control, use, or management by the Receiver of any Receivership Assets or with the Receiver's exercise of powers or discharge of duties under this Order, (c) altering any Records, (d) cancelling, revoking, terminating or limiting any insurance coverage, permits, registrations, certificates, licenses or contracts of any Defendant, or (e) filing or prosecuting any actions or proceedings that involve the Receiver or that affect any Receivership

Assets, except to the extent authorized by the Receiver or to the extent that any party to such action or proceeding may be required to answer or reply to any now pending complaint, motion or other pleading in order to avoid default.

15. The Receiver is authorized to file, record or register this Order with appropriate government offices and courts and to serve this Order on any person or entity whom the Receiver reasonably believes to be in custody or control of funds or other assets properly belonging to the Receivership Estate.

16. If the Receiver determines that the aggregate amount of Revenues and Protective Advances available to the Receiver are insufficient to pay the reasonable and necessary expenses of maintaining, preserving, and operating the Facilities in compliance with applicable law, then the Receiver may, on not less than ten (10) business days written notice to Plaintiff and Defendants, file with the Court a resignation and termination of the Receiver's further responsibilities to serve as receiver hereunder, whereupon, subject to a surrender of all of the Collateral to Plaintiff and the filing of a final report regarding the receivership with the Court, the Receiver shall be discharged. In connection with any such surrender of Collateral to Plaintiff, the Receiver, for himself, on behalf of the Receivership Estate and on behalf of Defendants, shall be deemed to have waived any notices otherwise required to be given by Plaintiff in connection with any public or private

sale or other disposition of any of the Collateral, including, without limitation, any notices otherwise required under the Uniform Commercial Code.

17. The Receiver is authorized to communicate with all persons as he deems appropriate to inform them of the status of this matter and the Receivership Estate. In connection with any final report, accounting and discharge of the Receiver, the Receiver shall seek and obtain final approval from the Court of the professional fees and expenses of the Receiver, his firm and his other Professionals.

18. Upon the request of the Receiver, the United States Marshal's Office, in any judicial district, is hereby authorized to assist the Receiver in carrying out his duties to take possession, custody or control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate.

19. Notwithstanding anything to the contrary in this Order, Plaintiff is hereby authorized (but not required) to take all actions it deems necessary or appropriate to realize upon any Collateral, including, without limitation, collection of any Accounts, foreclosure of its security interests in or liens upon any or all of the Collateral or exercise any power of sale granted in any of the Loan Documents, and apply the proceeds thereof to the payment of the Obligations. Except as otherwise agreed by Plaintiff in writing, the Receiver shall turn over all proceeds

of the Collateral to Plaintiff for application to the Obligations. Upon any foreclosure by Plaintiff, the Receiver shall cooperate with the Plaintiff and the party purchasing any Collateral at foreclosure by relinquishing possession of such Collateral and taking any other actions that may be necessary or desirable in connection with a foreclosure by Plaintiff.

20. The Clerk of the Court is authorized and directed to make certified copies of this Order, at the Receiver's request, for use by the Receiver.

21. Except for an act of gross negligence or willful misconduct, the Receiver, his Professionals and all other persons engaged by or employed by him shall not be liable for any loss or damage incurred by Defendants or any other person by reason of any act performed or omitted to be performed by them in connection with the discharge of their duties and responsibilities in this matter.

22. Defendants, Plaintiff and any other person asserting a lien upon any assets in the Receivership Estate, may request, by written motion filed with the Court and with at least five (5) business days' notice to Plaintiff and Defendants, a status conference or any other appropriate relief as to the results of the Receiver's management and liquidation of the Receivership Estate, the necessity or appropriateness of continuing the receivership, or whether any of the terms and conditions of this Order should be amended or modified in any way.

23. The Receiver shall be authorized to apply to this Court, with notice to Plaintiff and Defendants, for issuance of such other orders as may be necessary and appropriate in order to carry out the mandate of this Court.

24. This Court shall retain jurisdiction of this matter for all purposes, including, without limitation, for the purpose of amending, interpreting and enforcing any of the provisions of this Order.

**SO ORDERED**, this _____ day of October, 2016.

______________________________________

**HONORABLE ______________________**
**JUDGE, UNITED STATES DISTRICT COURT**

*[Signatures on the following page]*

Prepared and Presented By:

**PARKER, HUDSON, RAINER & DOBBS LLP**
Attorneys for Plaintiff

By: */s/ James S. Rankin, Jr.*
James S. Rankin, Jr.
Georgia Bar No. 594620

303 Peachtree Street, NE
Suite 3600
Atlanta, Georgia 30308
(404) 523-5300 (phone)
(404) 522-8409 (fax)
jrankin@phrd.com (e-mail)

# EXHIBIT B

## Mark A. Smith, CFA

Mark Smith is a Partner with Vantage Point Advisory, Inc and is based in Atlanta, GA. Since joining Vantage Point in March 2009, Mr. Smith has provided advisory services to a variety of companies, lenders and other advisory groups with a specific focus on middle-market firms. Mr. Smith is widely known for quickly assessing the critical aspects of each engagement and subsequently working with the key constituents to develop and execute strategies to address each situation. These matters have involved operational and financial restructuring, bankruptcy advisory and capital sourcing in addition to extensive financial modeling, due diligence, wind-down analysis and oversight as well as complex negotiations often involving multiple entities. Mr. Smith has served successfully as both a Receiver and Chief Restructuring Officer.

One of Mr. Smith's notable engagements was on behalf of a regional trucking company, where he served as the Chief Restructuring Officer over an approximately eight month period. Mr. Smith was retained post-petition, and tasked with stabilizing a situation where the Company's CEO, CFO and former financial advisor had all been removed due to ongoing fraud allegations. After retaining a new Controller, Mr. Smith moved quickly to reconcile and streamline the internal accounting functions, as well as identify and dispose of certain fixed assets. Efforts were then quickly transitioned to the development of a Plan of Reorganization, which included four separate entities (jointly administered) and was unanimously confirmed by all three secured lenders, as well as an active committee.

Another notable engagement involved a leading stone distributor, where Mr. Smith served as a financial advisor. During his tenure, he assisted in the negotiation and execution of numerous forbearance agreements with the Company's secured lender, multiple lease amendments, as well as ongoing cash flow and collateral projections along with the orderly disposition of select assets located in six US states, as well as South Africa and Namibia, Africa. These efforts led to an agreement with the secured lender that allowed for relief from all personal guarantees and the subsequent establishment of a "newco" that commenced formal operations as a debt-free entity.

Prior to joining Vantage Point, Mr. Smith served as a Vice President in GE Capital's Commercial Lending group. While at GE, he was a key member of an originations team responsible for sourcing leverage loan products. Mr. Smith also served as an Associate in the Corporate and Investment Banking division of Wachovia Securities with primary responsibility for underwriting and managing large corporate cash flow and previously middle market asset-based loans. Mr. Smith began his career as an Analyst in the Fixed Income division of Lehman Brothers. Mr. Smith is also a Partner with Finley, Comer and Company, an affiliated firm providing similar services.

Mr. Smith earned his Masters of Business Administration with a concentration in finance from the Owen School at Vanderbilt University in 2004 and his bachelor's degree in finance from the University of Alabama in 2000. Mr. Smith is also a CFA Charter holder. Mr. Smith serves on the Board of Directors for the Turnaround Management Association's "Next Gen" organization, as well as GiGi's Playhouse, a Down syndrome achievement center where he is Treasurer. A list of select engagements where Mr. Smith has provided advisory services is included below.

| | |
|---|---|
| Drug Transport, Inc. | Chief Restructuring Officer / Debtor Financial Manager |
| Roofing Atlanta, Inc. | Chief Restructuring Officer / Interim CFO |
| Otis Productions, LLC | Restructure Advisory / Capital Raise |
| G&L Marble, Inc. | Restructure Advisory / Receivership |
| Interline Logistics Group | Restructure Advisory |
| CTSI Global | Restructure Advisory |
| Treat Hardwood Lumber, Inc | Restructure Advisory / Capital Raise |
| World Micro Components, Inc. | Restructure Advisory |
| United Pump and Controls, Inc. | Restructure Advisory |
| Pioneer Concrete Pumping, Inc. | Restructure Advisory |
| American Stainless and Supply | Restructure Advisory |
| Draphix, LLC | Chapter 11 Bankruptcy Advisory |
| MP-Tech America, LLC | Restructure Advisory – Section 363 Sale |
| Tempered Glass, Inc. of Atlanta | Restructure Advisory – Article 9 Sale |
| IndustrialPlex, Inc. | Creditor Advisory |
| Transco, Inc. | Creditor Advisory |
| MoneyGram International, Inc. | Corporate Finance Advisory |